IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**CANYON S. BOYKIN**                                                                                     **PLAINTIFFS**

**VS.**                                                             **CIVIL ACTION NO.** 1:16CV25-SA-DAS

**CITY OF COLUMBUS, MISSISSIPPI**                                   **DEFENDANT**

**JURY TRIAL DEMANDED**

## COMPLAINT

This is an action to recover actual damages against the City of Columbus, Mississippi, for employment actions taken against Plaintiff in violation of his procedural and substantive due process rights. The following facts support the action:

1.

Plaintiff CANYON S. BOYKIN is a white adult resident citizen of Columbus, Lowndes County, Mississippi.

2.

Defendant CITY OF COLUMBUS, MISSISSIPPI is a political subdivision of the State of Mississippi. It may be served with process upon its mayor, Robert E. Smith, Sr., at 523 Main Street, Columbus, Mississippi 39703. At all relevant times, Defendant acted under color of state law.

3.

This Court has federal question jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343, to address claims arising under the First and Fourteenth Amendments to the United States Constitution, and by 42 U.S.C. § 1981. This action is authorized by 42 U.S.C. § 1983.

00294124.WPD

4.

Plaintiff was employed by Defendant as a police officer for three and one-half (3 ½ ) years. During the time of Plaintiff's employment, Defendant had in effect a civil service system. Under the civil service system, disciplinary action could be imposed upon non-probationary employees, such as Plaintiff, only upon proof of "good cause." This requirement of "good cause" gave Plaintiff a reasonable expectancy or Fourteenth Amendment "property" interest in his employment.

5.

In April 2015, a shooting occurred in the Simms Scott area of Columbus, a high-crime area. At that time, Defendant, acting through its mayor, and with the approval of the City Council, determined that because certain areas of the city were burdened with crime, infested with high drug use, filled with alcohol abuse, and dangerous to citizens, a Special Operations Group ("SOG") would be formed to patrol heavily in the dangerous areas.

6.

Because of Plaintiff's excellent record, he was among four (4) officers who were selected for the SOG unit.

7.

In working with the SOG unit, Plaintiff, along with other members of the SOG unit, observed City Councilman Turner, on several occasions, using alcohol to excess. Officers requested their superior to allow them to arrest Turner, but the request was refused on the sole grounds that Turner is a City Councilman.

8.

Councilman Turner did not want the law strictly enforced in his district. Accordingly, Turner directed members of the SOG unit not to patrol his district. Turner is prejudiced against members of the SOG unit because he identified with the persons breaking the law who resided in his district. As a result of Turner's directions, the SOG unit was not allowed to patrol in Turner's district, resulting in that district's being particularly crime infested and dangerous to law-abiding citizens.

9.

On or about October 16, 2015, Plaintiff, SOG Officer Johnny Max Branch (white), and SOG Officer Yolanda Young (black) were patrolling one of the high-crime areas to which they had been assigned. There was a civilian passenger (Plaintiff's fiancé) in the vehicle, but that civilian was there pursuant to rules which allowed "ride alongs," and this ride along had been approved by the Plaintiff's superiors at the Columbus Police Department. Plaintiff violated no rule by having his fiancé (now wife) in the vehicle.

10.

As Plaintiff and the other officers patrolled a high-crime area, they observed a traffic violation (no tag light) on a vehicle driven by a female, with a male passenger whom they later learned to be Ricky Ball, a black person.

11.

Under the rigorous enforcement policy that had been mandated by Defendant, the three (3) officers were required to stop the vehicle.

12.

After all three (3) officers agreed that a stop was appropriate, Officer Branch, who was driving, activated the blue light, in order to stop the vehicle in which Ball was a passenger. The female driver of the vehicle, did not immediately stop, but did begin to slow down the vehicle. The vehicle went into Councilman Turner's district and Plaintiff, and the other officers, followed. As the vehicle slowed, the passenger, Ball, jumped from the vehicle and ran. With the police car still moving, Plaintiff also jumped from the police vehicle in order to give chase.

13.

The reason Ball ran is now obvious. He was under indictment for the sale of drugs. Ball, as he was running, possessed substantial amounts of cocaine and marijuana.

14.

After Ball had run a short distances, Plaintiff was able to overtake him and get in close enough range to shoot him in the back with a taser. The taser had its intended effect, and Ball fell to the ground on his back. When Ball fell on his back, Plaintiff observed a pistol in his right hand across his chest. The taser had caused Ball to be temporarily stunned, and Plaintiff began backing away from this armed suspect as he had been trained to do.

15.

The effects of the taser wore off, and Ball got up and began to run. As Ball was running, he turned his body to the right, facing Plaintiff, as if to shoot Plaintiff with the pistol he had in his right hand. Before Ball could shoot him, Plaintiff fired his service weapon in self-defense. Ball then ran from the scene. Shortly thereafter, Officer Branch arrived at Plaintiff's position.

16.

Not knowing at that time if Ball had been hit or not, Plaintiff and Officer Branch pursued Ball through a field until they lost sight of him. Shortly thereafter, Plaintiff found blood and realized he had hit Ball. Plaintiff and Officer Branch decided that they should not pursue Ball any further until other officers arrived at the scene, fearing Ball might be waiting in ambush, and believing that a large display of force would discourage Ball from ambushing officers.

17.

When other officers arrived, a superior officer directed Plaintiff to leave the scene and return to the police station. Plaintiff waited at the police station until he was informed that Ball "did not make it."

18.

When Ball was found by other officers, the pistol and the marijuana, both with Ball's blood on them, were found within arms' reach of Ball. A prescription bottle containing rocks of crack cocaine was found along the patch Ball had run, indicating that he had thrown the bottle while running.

19.

On October 29, 2015, Police Chief Carlton told Plaintiff that the City Council was going to fire Plaintiff the next day. Chief Carlton advised Plaintiff to resign, so he would not have a termination on his record, thereby jeopardizing his future employment opportunities. Chief Carlton further informed Plaintiff that the resignation needed to be done "now," since he was fearful of what might happen at the funeral on the upcoming Saturday if Plaintiff were still employed.

20.

Because the City Council was going to fire him anyway, Plaintiff resigned from his employment. Plaintiff's resignation was not voluntary, but was a constructive discharge.

21.

The next day after Plaintiff resigned, Defendant purported to discharge him from his employment. The City Council gave Plaintiff no notice of hearing nor hearing.

22.

The City Council, because of uninformed public pressure, had already determined in advance that it was firing Plaintiff. Furthermore, one or more of its members were biased against officers who enforce the law in their districts. Therefore, the City Council was not the fair and impartial hearing tribunal required by the due process clause of the Fourteenth Amendment.

23.

Plaintiff has received information indicating that the City Council claims it did not fire him because of the shooting, but because Plaintiff had allegedly made inappropriate social media postings, one of which the City falsely alleged was racist.[1] The postings to which Defendant refers were postings made more than one (1) year ago.

24.

Whether or not one agrees that Plaintiff's social posting was appropriate, it was within his First Amendment rights. The postings had not caused any disruption or disorder in the community.

---

[1] Plaintiff's lack of prejudice against black persons is established through an earlier incident in which Plaintiff, along with Officer Johnny Max Branch, dove into a freezing lake and saved a black criminal suspect from drowning. It is also established through Plaintiff's close professional relationship with his fellow SOG team member, Officer Young, who is black.

25.

To discharge Plaintiff because of the internet postings over one (1) year old, and which expressed Plaintiff's opinion on social matters, violated Plaintiff's First Amendment free speech rights.

26.

Plaintiff was constructively discharged and discharged under circumstances, which infringed his good name and reputation, making it difficult, if not impossible, for him to find other employment. This was a denial of "liberty," without procedural or substantive due process, in violation of the Fourteenth Amendment.

27.

Plaintiff would not have been constructively discharged and discharged, except that he is white and the deceased was black. Thus, Defendant violated Plaintiff's right to be free from race discrimination as guaranteed by 42 U.S.C. § 1981, and by the equal protection clause of the Fourteenth Amendment.

28.

Plaintiff's discharge and constructive discharge was caused by a biased hearing tribunal, the City Council. Defendant, therefore, denied Plaintiff's Fourteenth Amendment liberty and property interest, in violation of substantive and procedural due process.

29.

The City Council did not give Plaintiff written notice of the charges before his discharge. This violated procedural due process.

30.

Plaintiff has suffered lost income and mental anxiety and stress as a result of Defendant's actions.

### REQUEST FOR RELIEF

Plaintiff requests actual damages in an amount to be determined by a jury, reinstatement, and reasonable attorneys' fees and costs.

RESPECTFULLY SUBMITTED, this the 8th day of February, 2016.

                                      CANYON S. BOYKIN, PLAINTIFF

By:    */s/ JIM WAIDE*
        JIM WAIDE
        MS Bar No. 6857

WAIDE & ASSOCIATES, P.A.
332 North Spring Street
Tupelo, MS 38804-3955
Post Office Box 1357
Tupelo, MS 38802-1357
Telephone: (662) 842-7324
Telecopier: (662) 842-8056
Email: waide@waidelaw.com

JEFF REYNOLDS, ESQ.
JEFFERY P. REYNOLDS, P.A.
Post Office Box 24597
Jackson, MS 39225
Telephone: (601) 355-7773
Telecopier: (601) 355-6364
Email: jeff@jprpa.com

ATTORNEYS FOR PLAINTIFF